v. Attorney General, Appellate No. 18-3595. Good morning and may it please the court, Tylynn Traer for the government. I'd like to reserve three minutes for rebuttal if I may. Thank you. Plaintiff is prohibited from possessing a firearm under section 922 g1 as a result of his conviction under Pennsylvania law for driving under the influence at the highest rate of alcohol. Isn't the issue in this case whether it qualifies as the kind of serious offense that our Pombok court in Vindorop described? That's correct and under the factors of this court considered in Vindorop, driving at the highest rate of alcohol does qualify as a serious offense. Vindorop left no doubt that some misdemeanor crimes are serious offenses and in that section of the opinion Vindorop cited to Tennessee v. Gardner where the Supreme Court recognized drunk driving in particular is the type of misdemeanor that involves a more significant physical threat than even some felony offenses. It's typically considered a traffic offense although it may result in of course serious consequences but drunk driving isn't it generally considered a traffic offense? Well yes but as the district court noted here there's no doubt as to the perilous and tragic outcomes of drunk driving and as the worst type of drunk driving offense here the Pennsylvania legislature sought to impose more heightened penalties precisely because it found that the lion's share of alcohol-related driving fatalities are caused by individuals who engage in drunk driving with excessively high blood alcohol. The offense itself is not the focus but rather the consequences of those who engage in drunk driving. Is that what we're to look at? No we're looking at the crime of conviction here driving under the influence of the highest rate of alcohol which the Pennsylvania legislature... So the focus is just the statute itself? Well the focus is to the offense that plaintiff committed but for instance in the Binderup opinion the court looked to whether or not the offense committed was a violent one and while there's no formal element of violence here the crime is no less violent for that fact and as the district court noted again the thousands of fatalities that result from this type of offense that's exactly why the legislature... Does this mean that we look at the potential for violence? No I think it informs why the Pennsylvania legislature considered this a serious offense and so Binderup said that we presume the judgment of the state legislature to be correct absent a strong reason to displace that judgment and that burden of course is on the challenger and here there's no dispute by the district court who acknowledged that for example a second DUI offense regardless of blood alcohol level certainly demonstrates maladjustment and reckless disregard for the safety and well-being of others. So you're talking about it presents a lack of virtuousness if we're going back to the founders. Correct, to the truer justification I guess underline why those who commit serious offenses forfeit their Second Amendment rights I think it's not just a dangerous offense it's a reckless offense and it's an inherent the offense demonstrates an inherent reckless disregard for the safety of others. So are you asking us to add a factor basically to the Binderup non-exhaustive list where it talked about like is it a felony what's the exposure is there an element of violence are you at and cross jurisdictional consensus so are you asking us to consider a new another factor? What I'm saying is necessary to consider another factor I think in looking at whether or not the crime is a violent one all these considerations that the Pennsylvania legislature look to are. But didn't the Supreme Court already hold that DUIs are not violent and when it was either doing the ACA ACCA or the sentencing guidelines one of their pronouncements on this subject so they already took it out from being violent so why but you keep using language that talks about potential for danger to others so. Well several points there your honor one the Supreme Court looked to whether or not drunk driving qualified as a violent felony met certain statutory criteria that the court later held constitutionally vague but my only point is to you to your honors earlier question that whether or not the offense is a violent one speaks to the seriousness of the offense and we have that nexus here and the district court recognized all of that in the way that it recognized that the Pennsylvania legislature went out of its way to punish more severely this offense far beyond the traditional sentence described to a felony. Maybe that's what the focus should be how does the state of Pennsylvania treat this type of offense and apparently it does treat it to a term in jail because of drunk driving so that's exactly right your honor the legislature do treat this as a very serious offense apparently. We have a very robust legislative history here where the Pennsylvania General Assembly stated that it it meant to make clear the driving law under the influence of alcohol is quote a very serious matter in Pennsylvania. For instance you know there's there are major differences though between the impediments for a felony and a misdemeanor. The right to vote specifically is one of them. A misdemeanant in Pennsylvania is allowed to vote. A felon is not allowed to vote. So that and other right to serve on a jury some of these characteristics are not those that attach to misdemeanors. Binner no doubt recognized that there are some distinctions between felony and misdemeanor crimes although Binner have also recognized that the Supreme Court itself has stated that those differences sometimes are minor. If it doesn't just go into the question that Judge Fuentes asked how Pennsylvania characterized it. Yes but I looking here to what the General Assembly did in 2003 it overhauled entirely as drunk driving laws to specifically grade drunk driving as it's committed with higher blood alcohol levels to punish more severely those offenses as an individual gets behind the wheel having consumed more alcoholic drinks and so this is the worst offense in its class a misdemeanor punishable by five years of imprisonment I don't think there's any doubt as to how serious the Pennsylvania legislature considered this offense but and to go back to another point that Judge Fuentes made also under Binder up when we're looking but it's not let me go stop you right there is that fair to somebody like mr. Holloway who by the fate of where he was driving at that time got in most other states he would not have been charged with an offense that was that serious I mean there's a Pennsylvania and have less Second Amendment rights as a result than someone who resides in West Virginia no that's not what we're saying your honor Congress left a role for the states and deferred to consider judgments of state legislatures but the federal prohibition is not constitutionally infirm on that basis the Supreme Court has recognized in a different context that because of the state's role here in this scheme that there it is inevitable to some extent that some sentences are going to be different but under binder up we look to the seriousness of the offense we look to whether or not the particular crime of conviction here has been considered serious by the state legislature and that's and that is what we have here we also have numerous should the focus be on the potential penalty because how do you get how do you come to the conclusion this is really serious that is what's commonly known as drunk driving I think the clearest indication is the sentence maximum sentence imposed by the legislature which is exactly that's that's really my question do you look at them the penalty that can be imposed whether the maximum sentence whether includes a determined jail or not and that goes back to judge Fisher's question some states don't do that some so how why should we impose consider it a serious offense here when other states even perhaps in our circuit do not well several points there your honor I do think the clearest indication is the maximum sentence described by the legislature but of course the court and vendor have also looked to the cross jurisdictional consensus surrounding the crime and I hear no matter where plaintiff committed his drunk driving offense no matter where he drives into the influence of a blood alcohol level of 0.16 or higher that offense is criminalized as compared to the offenses at issue and vendor up a regulatory violation a consensual sexual relationship with a minor as the court noted in binder up that underlying conduct was not even outlawed in many states and so and that's a very different case from what we have here and not only do we have cross jurisdictional consensus but we have here Congress also in 1998 in passing its federal highway funding law sought to encourage states to assign heightened penalties where individuals habitually engage in drunk driving with excessively high blood alcohol levels we also have several statements from the Supreme Court the Supreme Court has often repeatedly lamented the tragedy of the quote carnage caused by drunk drivers we have consensus between the Supreme Court Congress Pennsylvania legislature and of course the district court let me ask you this I thought that I had does it matter that there's a significant period of time that passed from the time that he was convicted of drunk driving until the time that he made an application for a weapon and if I'm not mistaken I'm trying to recollect I think it was about 14 years should that factor not as he's behaved himself for 14 years not when we're at step one looking to whether or not plaintiff has distinguished himself from the class of historically barred from Second Amendment rights and Binder up clearly stated that on neither the passage of time nor evidence of rehabilitation would be considered at step one the Second Amendment analysis they're perceived on a categorical basis so plaintiff is this I ask you a question a very basic question for our analysis of this case maybe you can help us did our did we adopt a test that binds our court binds us as a panel in determining the whether a an offense is a serious offense under step one yes and what is that test well as the been as judge Ambrose opinion noted that his opinion the controlling law in this circuit is looking to the seriousness of the offense and of course this court has well he talked about a multi-factor test did he not that's right a non-exhaustive multi-factor okay but did a majority of our court agree with that well under a marks analysis your honor it is the narrowest rationale and how do you get to the narrow how do you get to the narrowest rationale well your honor it also it is the narrowest rationale that the court outlined in in the opinion but the court subsequently in for example the beers opinion has treated the the bender up non-exhaustive the factors that were outlined in bender up as the law of this circuit so I don't think there's any any dispute there okay you're comfortable with that yes all may please the court good morning I'm attorney Joshua Prince and I represent mr. Holloway the appellee in this matter what is follow-up on judge Fisher's question which I had to give some thought to which which has to do with the sentence that may be imposed and in this case your client was exposed to if I'm not mistaken five years in prison even though there was a lapse between the time that he was sentenced until the time he made an application nonetheless doesn't that suggest that this is a real serious offense if he was subjected to as an offender as a second offender to five years in prison although he only got 90 days I understand so your honor I don't believe it was a serious offense first and foremost any misdemeanor of the first I'm looking at what the legislature did and if they concluded that you can be sentenced up to five years in prison if you commit this offense doesn't that that the legislature treats it as a very serious I don't believe so again first and foremost they treat it as a misdemeanor which under the first prong of the binder up analysis is not dispositive of but is stated in the vendor up decision to be a very important factor so first we have interesting though that the five-year sentence although labeled in Pennsylvania as a misdemeanor under federal law would be a felony and under most other states would be labeled a felony so we're talking about a labeling issue and back to judge point regardless of the label five years in prison with a mandatory minimum sentence doesn't that communicate the Pennsylvania legislature view that this is a serious crime for which a serious sentence should be considered by the sentencing judge and if that were the case mr. binder up would have failed in his challenge because he too was convicted of a misdemeanor of the first degree statutory sexual assault or excuse me corruption of a minor he was charged also with statutory but the only offense he was convicted of was corruption of a minor but he was there was no mandatory minimum jail right he faced where an offender of this or faces a mandatory minimum prison sentence of 90 days which the court would not a short period which the court found was improper for mr. Holloway actually granted him work but couldn't alleviate him of the mandatory 90 days also a significant factor that I think the court needs to be aware of is the co-plaintiff in the combined cases of bender up mr. Suarez was convicted of a DUI and in the binder up case this court's majority opinion states that they find that mr. Suarez is DUI that occurred after the incident that actually triggered his prohibition was non-serious and was not something that would prohibit him from being able to successfully bring the Second Amendment as applied challenge to his carrying of a firearm without a license in Maryland he had a different his his offense was different he was not at the highest level alcohol he didn't face a mandatory minimum I don't know that you can analogize the criminal conviction of one against the other when there was a different different exposure different statute and again I go back to judge Fuentes question to you is how do we discount the Pennsylvania legislature's decision and its language if I may I would suggest looking to Pennsylvania law in Pennsylvania law as we've addressed in our brief in section 18 PA CS section 6105 c3 it specifies that in order for an individual to lose the right only to purchase new firearms but still keep the firearms they own they must be convicted of three DUIs in a five-year period an individual could have 20 separate DUIs still be able to provided that three DUIs do not come in a five-year period that's in 18 PA CS section 6105 c3 it does have its own section in our brief where we address it and in fact Chief Judge Connor also addressed it in his decision but you could have a lower but that that hypothetical person who doesn't hit the but alcohol level of the serious the higher one that person could have three and be disqualified so he's done a lesser offense and loses firearm that doesn't that undercut your argument I don't believe so because we said we were going to look to see how the state treats DUI and if we're going to look to how the state treats DUI not look to the federal prohibition strictly the state prohibition state law says you need to get three DUIs in a five-year period to lose your right to purchase new firearms but in actuality as Judge Schwartz is it could be three convictions 4.08 or even less so that's I think it does cut against your argument well and that's fair enough but again the only thing we do have in relation that we know where the General Assembly of Pennsylvania addressed in relation to DUI firearms prohibitions is section 6105 c3 there the General Assembly said whatever the grading of the DUIs if you get three in five you're prohibited they could have said if you get two of the highest blood alcohol content in five years we're going to prohibit you they did not do that and that's why if we look to state law I do not believe that there is any support for Pennsylvania the General Assembly within Pennsylvania treating it as a serious offense. What about all the comments by the Supreme Court of the United States various justices have made observations your colleague made reference to Tennessee v. Garner about the fact that DUIs pose tremendous danger to the to the public why shouldn't we consider that as among the the indicia of seriousness because once again we see case after case one of the Supreme Court cases was BEGAY versus the U.S. where in there they acknowledge yes DUI does have some harmful effect to society and by no means am I condoning it but at the same time it's not so serious it's not treated so serious to strip individuals of constitutional rights and in fact this is the only right. I'm focusing on the sentence in Pennsylvania. You say it's not treated seriously. The legislature says if you do this and you're found guilty you will maybe sentence up to five years in prison. And that was the same for Bindrup and so if that is the analysis that is directly contrary to this courts en banc decision in Bindrup where this court held that a misdemeanor of the first degree was not of such a character that precluded the plaintiff We didn't hold that all misdemeanors of the first degree were not of such a But the criteria the court specified was first we look whether it's a misdemeanor or a felony and that a misdemeanor is a significant factor in determining that a state did not believe it to be serious. All right there's no question here that Mr. Holloway was convicted of a misdemeanor, a first degree misdemeanor. Where do we go from there? What's our next step? Was it violent is the next issue under the first prong of Bindrup. And then and again every court to look at it has acknowledged that DUI is non-violent. All right then we move on to the cross state jurisdictional analysis. And what does that show us? So we spent a substantial amount of time in our brief. We did provide a 50 state survey to the district court that the district court relied on. This court has before it and depending on whether you categorize Mr. Holloway's DUI as a first or second DUI will change the analysis. But even taking the government's position that it is a second DUI offense, only seven states even looking at the highest categories that could be imposed for different blood alcohol contents would trigger a prohibition under federal law in this situation. So for example if Mr. Holloway had found himself in Arizona he would not and had committed the same exact offense he would not have triggered any prohibition under 922 G1. But your officer made a point during her presentation that the states are criminalizing the conduct it's not just a traffic violation it's been criminalized. Doesn't that demonstrate a cross jurisdictional message that this is a serious offense, that it's criminal? All Second Amendment as applied challenges are going to relate to criminal conduct. Generally speaking if we're not, let me restate that. All Second Amendment as applied challenges under 922 G1 are going to relate to criminal conduct. I understand that because otherwise you would have the condition precedent that would cause you to be disqualified from carrying a firearm. I understand that. My point is your adversary just made a point. And I hear what you're saying that the states do differ in terms of the nature of the punishment. And hence whether it would trigger 922 G prohibition. I understand you right there. My question to you is it goes to the criminalization of it. And that there's a cross jurisdictional agreement that it's a criminal act. Do you agree with that statement? As our cross jurisdictional analysis supports in every state there are crimes for DUI. Every state it varies. And what the maximum sentence that could be imposed is what different obligations an offender may have. In ignition interlocks and things such as that. But one of the other issues that we addressed in our briefing is the fact that in no state do they in essence permanently deprive someone of the privilege of having a driver's license. Whereby there is no recourse for them to get it reinstated. There were I believe five states where it suggests it's permanent. But yet there there were mechanisms in place for someone to still petition. What we do see is that in order for any of the states to strip someone of that privilege they have to at least have committed three DUIs. And that's a privilege not a right. Is it inappropriate to consider the deterrence effect of the drug driving statutes when that penalty is imposed when someone is dispossessed of the right to have a. Respectfully your honor I have yet to meet a criminal defense attorney a district attorney or many judges who understand that a second DUI can trigger any prohibition under federal law. My experience has been Pennsylvania attorneys look to state law. They see the 6105 C3 prohibition and advise a client. Oh no you didn't get three DUIs in a five year period. This isn't a felony that's specified in 6105 B. You're good to go. And we've represented Judge Funches asked you about deterrence. Like should there be some consideration as to whether there should be serious consequences from this type of conduct including. It's serious enough such that you fall into the binder up cat considerations for being precluded. If I understood Judge Funches question so your your comments didn't sound like they were answering his question about deterrence. I don't think it can be a deterrent if individuals aren't aware of the fact that it will be triggered by it is where I was trying to go with. Well I have binder up now tells them serious offenses it is because but before binder up your client's offense would trigger 922 G1 straight up on application because it's a well labeled a misdemeanor the offense exposed someone to a penalty of greater than two years. So under 22 G1 by application your client would have been prohibited. It was only with the binder up decision. Was there an avenue putting aside the 1990s mechanism to have your rights restored. Was there an avenue for even your client to get access. So there was notice. I don't know to G gave notice. I don't know that that's necessarily accurate. Giving the marzarella decision that this court issued in 2010 long before binder up where it did acknowledge that Second Amendment as applied challenges could in essence be brought. But you're saying you understood you correctly were suggesting a person convicted of an offense under the same statute as your client would not have noticed that they would be losing their firearms. But 922 G1 was clear as day and said yep. Again I don't believe individuals are aware of it. Unfortunately it's been in my experience. I do do. I'm not talking about I mean they have no you're not claiming a due process violation. Great. Not in this case. No we are not. I mean there's a separate issue under Padilla and whether you know where someone pleads guilty and isn't advised that the potential loss of constitutional right. But in this case no. This is a Second Amendment as applied challenge and one of the other issues that I know this court asked us to be prepared to address the under who's before you do that. Let me jump in. Assuming that assuming that any that the panel agrees with you that your client survives the analysis under binder up step one and his Second Amendment that he can be maintains his Second Amendment rights. If we get to if we get to binder up step two what kind of scrutiny obviously. Well your honor I'm acutely aware that your honor was part of a concurring opinion that suggested that to the extent we would even get to that point. That there really shouldn't be any scrutiny applied that it should be the fact that you've met the traditional the factors that they don't apply to you and therefore that's it. You can't really say that your rights are that worth insisting upon that opinion was it was a concurring opinion. Yeah I acknowledge that your honor. And so obviously I believe strict scrutiny should apply when we're talking about a constitutional right when it involves that constitutional right in the home that obviously we know in DCV Heller the U.S. Supreme Court held that was at the core of the Second Amendment. How can you say that when in Marzarella we said that intermediate scrutiny. That was in fact in Marzarella the court actually acknowledged that they weren't sure whether intermediate they applied intermediate scrutiny. Well they also said they applied strict said a bunch of other precedential cases so I think that this circuit has already spoken on intermediate scrutiny on under this statute correct. Under Bindrup yes they applied intermediate scrutiny. Again we did address in our brief what we thought and we said there was then we also went on to intermediate. There was a difference of opinion in Bindrup as to what the standard does. Yes your honor. And in this case and I was alluding to this beforehand this court asked us to address under inclusivity. And that is now that we get to that if we get to that and I see I'm out of time may I respond. Answer Judge Fisher's question. Yes your honor. If we get to that step then the government has not provided this court or part of the record with any support that these are considered to be within the confines of these. Preventing our mayhem or public safety concerns because if that was the government's position then it should be denying any individual convicted of a first or second DUI depending on how you take the government's position across the United States regardless of what the penalty that could have been imposed was. And yet we don't see them taking that position. In fact when the government was asked earlier as to what position it was taking it specifically stated that it was solely based on the amount of time that the crime could have been punished for. Not even what it was punished for but could have been punished for. You're representing that was your adversary's position right here in front of the three of us. That was my understanding of her response to that question. I didn't hear that position and I think the difficulty in terms of this what position should be taken elsewhere in the United States. Very few I don't know anybody else any other court that has a binder up type analysis that's that's you know binding precedent. So I think we can only really talk about how a bidder up would you be applied in a place that it's binding. Fair enough and I do know that the court in Marzarella actually addressed under inclusivity. And there the court again I know I'm over time if I may just respond declared if a regulation fails to cover a substantial amount of conduct implicating the asserted compelling interest. It's under inclusiveness can be evidence that the interest is not significant enough to justify the regulation. We also have case law from the US Supreme Court in greater New Orleans broad band association. There are a number of cases addressing under inclusivity. In fact Judge Fuentes your honor issued a decision along with now Justice Alito in Blackhawk versus Pennsylvania striking down a permitting application here in Pennsylvania. They're all First Amendment cases. So it is a First Amendment doctrine but in binder up we even acknowledge that we are going to look to certain First Amendment precedent in relation to determining Second Amendment. And that's consistent with all constitutional rights. We look to how we treat other constitutional rights to determine where there isn't already case law in that regard on how to address it. I know I'm out of time if anyone has any additional questions. I am more than happy to respond to him. We would just simply ask that this court affirm the district court's decision and I thank your honors. Thank you. Thank you just a few quick points on rebuttal. To follow up on something that my friend on the other side said it's not our position that we look solely to the maximum punishment imposed. But I believe what I said was the clearest indication of how a state legislature considers a crime to be serious is the maximum punishment imposed. Of course we've discussed at length that the Pennsylvania General General Assembly has considers this offense to be so serious that it punishes it far beyond the traditional the traditional felony. I wanted to also address the argument that was just made essentially that the government should be outlawing more conduct. And I think that that argument that is very much at odds with what plaintiff has argued all along to the district court in here that 922 G1 is actually overbroad in that it outlaws nonviolent in addition to violent conduct. And of course that argument has no force after this court's decision in Bindera. But I think that that that that is a deeply contradictory argument. But now that's an under inclusive argument. Well right. So my point your honor is that I think in addressing this issue of under inclusiveness the argument that plaintiff is putting forth is contradictory to his original position that at step one and looking at whether or not he's distinguished himself from the class of forfeits their Second Amendment rights. On the one hand he's saying the 922 G1 is overbroad. It covers too much conduct. It should only cover violence. Let's get back to my question. I ask you on your initial argument. Is it fair to Holloway and others like Holloway in Pennsylvania that by the fate of them driving under the influence of alcohol in Pennsylvania their punishment as far as the Second Amendment is concerned is far different than practically all their states except seven I believe. Well is that fair to them as a matter of constitutional law across this country. I'd say your honor assuming that plaintiff doesn't assume that we're at step two now we're talking about an intermediate we're assuming we're at step two analysis. Okay. Assuming that this burdens on product unprotected conduct I think the test for intermediate scrutiny is quite clear. Bender up under Masarella as the court noted we look to whether or not there's a reasonable fit between the means and the ends. And of course we discussed in our briefing the Wintemute study among other studies cited in our expert report that clearly shows as Bender up stated that there's a plaintiff falls within a category of individuals that is not to be trusted with firearms and that's sufficient. As Bender upstated we can fulfill our burden assuming we reach step two by showing reliable statistics. The plaintiff falls within a class of individuals that cannot be trusted to responsibly handle firearms and that's exactly what the Wintemute study shows here. And of course the district court in no way question the liability or the method methodological soundness of that study. Thank you. Thank you. Thank you. We thank counsel for a well-argued and well-briefed.